IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-600

Filed: 31 December 2020

Wake County, No. 11 CVD 13578

JOHN EDWARD BISHOP, III, Plaintiff,

v.

SARA ELIZABETH BISHOP, Defendant.

Appeal by plaintiff from orders entered 30 April and 27 November 2018 by Judge Anna Worley in District Court, Wake County. Heard in the Court of Appeals 4 February 2020.

*Jonathan McGirt, for plaintiff-appellant.*

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for defendant-appellee.*

STROUD, Judge.

Father appeals from an order increasing his child support obligation. Because the trial court did not abuse its discretion in its consideration of "the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case," N.C. Gen. Stat. § 50-13.4(c) (2019), we affirm the trial court's order.

I. Background

The parties married in 1998 and separated in 2007. They had one child during the marriage, Sarah.[1] An initial child custody and child support order was entered on 31 December 2012 in District Court, Wake County ("2012 Order"). The 2012 Order provided for joint legal and physical custody for Sarah and required Father to pay $2,064.00 per month in child support and to pay 93% unreimbursed medical expenses. After entry of the 2012 Order, the parties filed several motions which did not result in a change in child support or custody but did result in the appointment of a parenting coordinator.

In February 2017, Mother filed a motion to modify child support, and the trial court held a hearing on this motion on 13 June 2017. On 30 April 2018, the trial court entered an order ("2018 Order") increasing Father's child support to $3,289.00 per month and changing the parties' respective percentages of the responsibility for unreimbursed medical expenses "with [Father] bearing 83% of such cost, and [Mother] bearing 17% of such cost." Father moved for a new trial and other relief from the April 2018 Order. The trial court denied Father's motions, and Father appealed from both the 2018 Order and the order denying the post-trial motions.

## II.     Standard of Review

> On appeal, "[c]hild support orders entered by a trial court are accorded substantial deference . . . and our review is limited to a determination of whether there was a clear abuse of discretion." Under this standard of review, the

---

[1] A pseudonym is used to protect the privacy of the child.

trial court's order will be upheld unless its "actions were manifestly unsupported by reason."

*Hart v. Hart*, ___ N.C. App. ___, ___, 836 S.E.2d 244, 250 (2019) (alterations in original) (citations omitted).

## III. Child Support

Father argues, "[t]he trial court erred as a matter of law in modifying the prior child support order and abused its discretion in determining the amount of child support." (Original in all caps.) Except for a portion of one finding, Father does not challenge the trial court's findings of fact as unsupported by the evidence, but he contends these findings demonstrate mathematical errors in the calculation of the child support. Father does challenge Finding No. 62, "Plaintiff has had a significant increase in his income from the time of the 2012 Order . . . ." Father argues his income had actually decreased. But Father's primary argument is that the trial court ordered him to pay child support in excess of the reasonable needs of the minor child, based upon the trial court's findings.

Father does not dispute the most important findings of fact, namely: (1) Father's income was $44,846.29 per month; (2) Mother's income was $7,542.00 per month; and (3) The child's total reasonable needs were $7,926.23 per month, of which Father then incurred $5,431.18 per month, and Mother then incurred $2,495.05 per month. Father argues that the percentages of responsibility assigned to each party

do not appear to coincide with the findings of the parties' incomes and the child's reasonable needs. In short, he contends the trial court's math is wrong.

A.  Father's Income

Father's primary argument focuses on the child's needs, but he does contend the trial court erred in finding his income had significantly increased since the 2012 Order. The hearing in 2012 was held in May, so the evidence addressed the income up to that point in the year. In the 2012 Order, the trial court made findings regarding Father's income each year from 2007 until 2011. Over these years, his gross income increased substantially from $162,517.00 in 2007 to $775,586 in 2011, when he began his employment with Cisco. Father's adjusted gross income for 2011 was $653,278, which would be approximately $54,440 per month. Father was a "founder and officer" of Inlet Technologies, Inc., where he worked from 2007 until 2011, when Cisco Systems Inc. purchased Inlet. Due to the buyout of Inlet, Father received additional payments including a "cash retention bonus" of $150,000 payable over two years, half in 2012 and half in 2013. In 2012, his base salary at Cisco was $200,000 and he was eligible for performance bonuses of an additional 35% of his annual gross salary.

Father argues that although the trial court made detailed findings in 2012 regarding his income, "[u]nfortunately, the trial court did not synthesize this cascade of data into an actual figure for [Father's] monthly income." Father proposes that we

should "reverse-engineer" the 2012 Order to determine Father's monthly income in 2012, and based upon the order's assignment of 93% of the responsibility for uninsured medical expenses to the amount of child support ordered, he contends the trial court tacitly found his income to be $60,888.43 per month. Father is correct that the trial court did not "synthesize the cascade of data" in the 2012 Order, and Father's mathematical argument is quite interesting. But the 2012 Order was not appealed. And the trial court did make a finding regarding the monthly income it used *"for the purposes of child support."* (Emphasis added.) The trial court found in the 2012 Order that Father's "gross monthly income, including base salary and bonuses, for the purposes of child support currently exceeds $30,000 per month." Thus, for our purposes also, Father's income in 2012, for purposes of child support, was in excess of $30,000 per month.

In the order on appeal, after quoting the findings from the 2012 Order regarding Father's income as of 2012, the trial court found Father "has had a significant increase in his income" and determined his "current ongoing monthly income to be $44,846.29 per month." The trial court made detailed findings regarding Father's employment history since 2012. He changed employers to Akamai Technologies and had a gross income in 2015 of $837,165. His gross income in 2016 was $607.622. As of the time of trial in 2017, in mid-May, Father had "earned salary and bonus totaling $246,500" and was not expecting any more bonuses for the year.

His base salary was $13,281 every two weeks, and the trial court extrapolated this to a "total salary and bonus" for the year 2017 of $432,500, or $36,041.66 per month. The trial court also made findings noting that Father had "historically received restricted stock shares from his employer," which "show up in his compensation and paystubs separate from his salary and bonus." In 2017, he had received about $233,000 in restricted stock shares, but he did not intend to redeem any shares at that time.

Thus, Father's income stream was complex and included elements of base salary, bonuses, and stock. His income varied over the years, but the overall trajectory was upward. In 2012, the trial court determined Father's income "for the purposes of child support" was in excess of $30,000 per month. In 2017, the trial court found Father's income "total salary and bonus" for the year 2017 to be $432,500, or $36,041.66 per month. The trial court did not err in finding Father "has had a significant increase in his income" since 2012.

B.     Reasonable Needs of Minor Child

Father contends the trial court erred in its calculation of the child's reasonable needs. He argues that the amount of child support is greater than the child's total needs based upon his mathematical analysis of the order. In the 2012 Order, the trial court made this finding regarding the child's needs:

> 74. Defendant's current reasonable monthly needs for her regular recurring expenses benefitting the minor

> child and for the minor child together, are $2,345, including before and after school care. The reasonable monthly expenses of the minor child, alone, including before and after school care, are $1,595.

Father argues that in the 2012 Order, "The trial court provided no explanation of the methodology used to derive its award of the oddly specific monthly child support award of $2,064 per month." Father proposes another complex mathematical analysis to determine exactly how the trial court may have calculated this amount in the 2012 Order, but again, the 2012 Order is not on appeal.

In the 2018 Order, the trial court found:

> 23. The Court has determined the child's total reasonable needs between the parties to be $7,926.23 per month. Out of the child's reasonable needs, the Plaintiff currently incurs needs of $5,431.18 per month, and the Defendant currently incurs needs of $2,495.05 per month. The disparity in the parties' respective reasonable needs for the minor child is directly related to the amount of respective discretionary income the parties have available for the minor child.

Father contends that the order on appeal did not "break out the child's expenses into the categories of, for example, 'the child's portion of total recurring expenses at Plaintiff's/Defendant's household' versus 'the child's individual monthly needs[,]'" making a direct comparison of the changes in the child's needs or expenses difficult.

Mother responds that Father did not challenge the trial court's findings of fact and notes the trial court made extensive findings regarding both parties' lifestyles, assets, and debts and set child support based upon all of these factors. Father

responds that he is "utterly mystified as to why Defendant's supplemental 'Statement of Facts,' should venture off into a wide- ranging review of Plaintiff's income, assets, and lifestyle. Defendant's diversionary hand- waving here is completely irrelevant to the arguments addressed in Plaintiff- Appellant's Brief." (Citation and emphasis omitted.) According to Father, it's all about the math, and the math is wrong.

Math is important, but it is not the only thing the trial court may consider. North Carolina General Statute § 50-13.4 provides the standard for child support, and Mother's discussion of the trial court's findings regarding "Plaintiff's income, assets, and lifestyle" is not "diversionary hand-waving." These are some of the factors the trial court *should* consider in calculating child support. *See* N.C. Gen. Stat. § 50-13.4.

Father's argument overlooks the trial court's determination that the child's needs are *greater* than the expenses stated on Mother's financial affidavit. The trial court explained this when rendering its ruling denying Father's post-trial motions,

> The fact that [Father] is in fact paying a certain amount that was attributed specifically to the child in his household—I know where you're getting your math, Mr. Sokol. In a pure mathematical calculation it makes sense. As a matter of equity in dividing up what the child herself should get, it doesn't make sense. . . .
> . . . .
> And therefore, the child should be entitled to have similar opportunities in both households, and the only way to do that is to divide the child's needs rather than trying to do this mathematical calculation of what I do actually provide for in my household.

Our cases have long recognized that the reasonable needs of a child are determined based upon the ability of the parents to provide:

> In addition to the actual needs of the child, a father has a legal duty to give his children those advantages which are reasonable considering his financial condition and his position in society.
> In *Hecht v. Hecht*, 189 Pa.Super. 276, 283, 150 A.2d 139, 143, Woodside, J., observed:
>> "Children of wealthy parents are entitled to the educational advantages of travel, private lessons in music, drama, swimming, horseback riding, and other activities in which they show interest and ability. * * * It is possible that a child with nothing more than a house to shelter him, a coat to keep him warm and sufficient food to keep him healthy will be happier and more successful than a child who has all the 'advantages,' but most parents strive and sacrifice to give their children 'advantages' which cost money. * * * Much of the special education and training which will be of value to people throughout life must be given them when they are young, or be forever lost to them."
> What amount is reasonable for a child's support is to be determined with reference to the special circumstances of the particular parties. Things which might properly be deemed necessaries by the family of a man of large income would not be so regarded in the family of a man whose earnings were small and who had not been able to accumulate any savings. In determining that amount which is reasonable, the trial judge has a wide discretion with which this court will not interfere in the absence of a manifest abuse.

*Williams v. Williams*, 261 N.C. 48, 57-58, 134 S.E.2d 227, 234 (1964) (citations omitted).

The trial court gave substantial consideration to the disparity in the parties' lifestyles and the parties' accustomed standards of living. Even if Father's income had decreased since the 2012 Order, as Father contends, the change in *his* income was not the relevant change. Whether Father's income is $44,846.00 per month (2018 Order) or over $30,000 per month (2012 Order), it is more than sufficient to cover Father's individual expenses, the child's expenses, and the amount of child support ordered. The issue is not Father's ability to pay; it is the reasonable needs of the child. The change alleged in the motion to modify child support was the increase in the child's needs. Father does not challenge the trial court's determination that the child's needs have increased since 2012, so modification is appropriate. This is a discretionary determination, and in an above-the-guidelines case, the trial court is not required to use a particular formula. *See* N.C. Child Support Guidelines, AOC-A-162, at 2 (2015).

For cases falling within the N.C. Child Support Guidelines, calculation of child support and review of orders is normally straightforward. Once the trial court has determined the numbers to put into the formula, math provides the answer. But in cases above the child support guidelines, the trial court must make a discretionary

determination based upon the factors set out in North Carolina General Statute § 50-13.4(c):

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2019).

The judge's consideration of the interplay of these factors is not dictated by a "magic formula." *Plott v. Plott*, 313 N.C. 63, 69, 326 S.E.2d 863, 867 (1985).

> To comply with G.S. 50–13.4(c), the order for child support must be premised upon the interplay of the trial court's conclusions of law as to the amount of support necessary "to meet the reasonable needs of the child" and the relative ability of the parties to provide that amount. To support these conclusions of law, the court must also make specific findings of fact so that an appellate court can ascertain whether the judge below gave "due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case." Such findings are necessary to an appellate court's determination of whether the judge's order is sufficiently supported by competent evidence. If the record discloses sufficient evidence to support the findings, it is not this Court's task to determine *de novo* the weight and credibility to be given the evidence contained in the record on appeal.
>
> The judge's consideration of the above factors contained in G.S. 50–13.4(c) is not guided by any magic formula. Computing the amount of child support is normally an exercise of sound judicial discretion, requiring

> the judge to review all of the evidence before him. Absent a clear abuse of discretion, a judge's determination of what is a proper amount of support will not be disturbed on appeal.

*Id.* at 68-69, 326 S.E.2d at 867-68 (citations omitted).

Even in a case falling outside the child support guidelines, the trial court may consider using a formula to guide its determination of child support, and if the court uses a formula, the calculations should be mathematically correct. *See id.* at 79, 326 S.E.2d at 873 ("Although the use of such a formula does serve as a convenient guideline in assisting the trial judge in fairly calculating child support awards, the formula used cannot be applied without some degree of mathematical accuracy."). Father contends the trial court used a "formula," of sorts, but did not do the math accurately. He argues the 2018 Order is "incoherent" and "that a child support award that is almost 110% of the child's total reasonable needs is demonstrably unsupportable." *If* the trial court were required to use a precise mathematical formula to establish child support, Father may be right. But the trial court's findings demonstrate that instead of using a formula to set the exact amount of support, it considered the parties' incomes and expenses but also gave "due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case." N.C. Gen. Stat. § 50-13.4(c); *see also* N.C. Child Support Guidelines, at 2. The trial court's findings emphasized its consideration of the parties "estates,

earnings, conditions, [and] accustomed standard of living of the child and the parties."

N.C. Gen. Stat. § 50-13.4(c).

Here, the trial court found

> 19.    [Mother's] expenses for herself and the minor child are skewed by a number of factors. For example, [Mother] currently drives a vehicle which is 10 years old and which has over 172,000 miles on it. It is not reasonable to assume that [Mother] will be able to continue to drive this vehicle without purchasing a new vehicle in the near future.    [Mother] previously owned a 2014 Toyota Highlander she purchased new which had monthly payments of $570. [Mother] sold this vehicle after owning it for several years to alleviate herself of the car expense in order to fit her budget.    [Father] on the other hand currently lists two automobile expense payments between himself and his wife in the amount of over $1,500 per month. The Plaintiff's vehicles were purchased within the last several years.

> 20.    In a similar fashion [Mother's] vacation expenses are a fraction of what [Father] spends for vacations.    For example, [Mother] last year incurred an expense of approximately $4,000 for her and the minor child to visit Costa Rica. This was an atypical vacation for the Defendant and the minor child. Typically [Mother] and [Sarah] go to the North Carolina oceanfront for vacation and incur an expense which is a fraction of the Costa Rica expense. [Father] by comparison within the past year or so has taken the minor child on a ski trip to Utah, a Disney Cruise, a trip to Disney World and a trip to New York City. All of these trips had attendant expenses for air fare, meals, shows, etc. where the vacation expenses for [Father] and the minor child totaled thousands of dollars.

> 21.    [Mother] had debts for multiple credit cards listed upon her affidavit in 2012. These debts did not appear on her affidavit filed in 2016.    [Mother] used a

portion of her settlement from the parties' divorce to pay these debts off. [Mother] has approximately $9,000 remaining from the divorce settlement. [Mother] also saves for retirement through a 401(k) plan through her employer. She has no significant equity in stocks, brokerage accounts, etc. like [Father] has.

22.    [Mother's] expenses for herself and [Sarah] are a fraction of what [Father] incurs, because [Mother] budgets her funds and only pays for the expenses that she is able to incur for [Sarah]. The standard of living [Mother] is currently maintaining for herself and [Sarah] is significantly less than what the parties and the minor child enjoyed at the time of the parties' separation and what [Father] has historically and currently enjoys after separation. She would incur greater expenses for [Sarah] if she had the means to do so. These increased expenses if incurred would still only be a percentage of the expenses [Father] incurs with respect to [Sarah] each month.

23. The Court has determined the child's total reasonable needs between the parties to be $7,926.23 per month. Out of the child's reasonable needs, [Father] currently incurs needs of $5,431.18 per month, and [Mother] currently incurs needs of $2,495.05 per month. *The disparity in the parties respective reasonable needs for the minor child is directly related to the amount of respective discretionary income the parties have available for the minor child.*

(Emphasis added.)

These findings are not challenged as unsupported by the evidence, so they are

binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)

("Where no exception is taken to a finding of fact by the trial court, the finding is

presumed to be supported by competent evidence and is binding on appeal."). The

trial court's findings focus on the disparity in the parties' estates:

> 9. [Father] also has a brokerage account with Charles Schwab which had an end of year value in 2016 of $655,071. By the end of April, 2017, the value of the brokerage account had grown to $821,606. The growth in [Father's] brokerage account reflects in part the deposit of the RSUs referenced in Finding of Fact #8 above. This growth had occurred despite cash withdrawals that [Father] occasionally makes from the account to maintain his standard of living.
>
> 10. [Father] has been married for several years. His wife does not work outside of the home and does not earn a salary. The Plaintiff and his wife within the past two years purchased a home in Raleigh with an approximate purchase price of $1.2 million.
>
> 11. [Father] has no ongoing indebtedness other than the mortgage on his home, the mortgage on another residence he owns in Lee County, and obligations for vehicle purchases. [Father] runs his ongoing expenses primarily through his Citi Advantage credit card. [Father] incurs charges on this credit card anywhere from between $15,000 - $35,000 per month and pays the card off each month. [Father] through the time period from October, 2016 through May, 2017 averaged purchases for wine, trips to vineyards, etc. in the approximate amount of $6,400 per month. He also purchased a birthday present for his wife in the amount of $8,000 and a piece of fine art in the amount of $3,105 during this time period.
>
> . . . .
>
> 16. Since the entry of this Court's 2012 Order, [Mother] has purchased a home in the amount of $262,000. [Mother] used a portion of her settlement from the parties' divorce to fund the down purchase for this house.

. . . .

21.    [Mother] had debts for multiple credit cards listed upon her affidavit in 2012. These debts did not appear on her affidavit filed in 2016.  [Mother] used a portion of her settlement from the parties' divorce to pay these debts off.   [Mother] has approximately $9,000 remaining from the divorce settlement. [ Mother] also saves for retirement through a 401(k) plan through her employer. She has no significant equity in stocks, brokerage accounts, etc. like [Father] has.

22.    [Mother's] expenses for herself and [Sarah] are a fraction of what [Father] incurs, because [Mother] budgets her funds and only pays for the expenses that she is able to incur for [Sarah].  The standard of living [Mother] is currently maintaining for herself and [Sarah] is significantly less than what the parties and the minor child enjoyed at the time of the parties' separation and what [Father] has historically and currently enjoys after separation.  She would incur greater expenses for [Sarah] if she had the means to do so.  These increased expenses if incurred would still only be a percentage of the expenses [Father] incurs with respect to [Sarah] each month.

The weight assigned to each factor mentioned in North Carolina General Statute § 50-13.4(c) is in the trial court's discretion.  *Plott v. Plott*, 313 N.C. at 69, 326 S.E.2d at 867-68.  The trial court set forth specific findings and gave due regard to the factors required by North Carolina General Statute § 50-13.4(c).  *Kleoudis v. Kleoudis*, ___ N.C. App. ___, ___, 843 S.E.2d 277, 283 (2020) ("Giving 'due regard' to the estates of the parties does not require detailed findings as to the value of each individual asset but requires only that the trial court consider the evidence and make

sufficient findings addressing its determination regarding the estates to allow appellate review."). Based upon those findings, we discern no abuse of discretion.

## IV. Post-trial Motions

Because we have concluded the trial court did not err in modifying Father's child support obligation, we also conclude the trial court did not err by denying Father's post-trial motions. This argument is overruled.

## V. Conclusion

We affirm the trial court's 2018 Order and the order denying the posttrial motions.

AFFIRMED.

Judge COLLINS concurs.

Judge BERGER dissents with separate opinion.

BERGER, Judge, dissenting in separate opinion.

"The determination of child support must be done in such way to result in fairness to all parties." *Walker v. Walker*, 38 N.C. App. 226, 228, 247 S.E.2d 615, 616 (1978) (citation omitted). Because the trial court's child support order is more than 100% of the minor child's reasonable needs, I respectfully dissent.

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2019).

The statute is clear and unambiguous: child support payments "shall be in such amount as to meet the reasonable needs of the child[.]" N.C. Gen. Stat. § 50-13.4(c). Here, the trial court determined that the "total reasonable needs" of the minor child was $7,926.23 per month based upon a finding that "Plaintiff currently incurs needs of $5,431.18 per month, and [ ] Defendant currently incurs needs of $2,495.05 per month." The trial court also found as fact that "[Defendant] would incur greater expenses for [the minor child] if she had the means to do so."

The trial court then concluded as a matter of law that increases in the parties' incomes and "an increase in the minor child's reasonable needs" constituted a substantial change in circumstances justifying modification of the prior support order. In ordering Plaintiff to pay $3,289.00 per month in child support, the trial

court imposed a child support obligation on Plaintiff that was 110% of "the total reasonable needs" of the minor child.

There is no support in the record for the amount awarded by the trial court. The majority is correct, "[m]ath is important," and parties should have some assurance that a child support order is based on objective criteria; not guesswork, flawed processes, or even a judge's implicit bias against wealth and wealth creators. However, the majority opinion allows trial courts to impose random, arbitrary child support obligations that it deems subjectively fair, thus, taxing parents of means in an effort to create emotional equality.

Child support payments are not intended, as the trial court found in finding of fact 24, to meet Defendant's needs. Child support is not spousal support. However, the trial court appears to have considered a new car as one of the expenses Defendant would incur "if she had the means to do so." The trial court addressed the age and mileage of Defendant's vehicle, and determined that "[i]t is not reasonable to assume that [ ] Defendant will be able to continue to drive this vehicle without purchasing a new vehicle in the future." Even if we assume that Plaintiff should be solely responsible for purchasing Defendant's new car as part of his child support obligation, the trial court improperly considered this unsubstantiated future expense. *See Witherow v. Witherow*, 99 N.C. App 61, 65, 392 S.E.2d 627, 630 (1990) ("[A]n award which takes into consideration an unsubstantiated expense rather than a current

expense is an abuse of the court's discretion."). *See generally Thomas v. Burgett*, 265 N.C. App. 364 (2019).[2]

I would remand this matter to the trial court for entry of an order that limits Plaintiff's child support obligation to the minor child's reasonable needs in accordance with N.C. Gen. Stat. § 50-13.4(c).

---

[2] Because the South Eastern Reporter incorrectly lists *Thomas v. Burgett* as an unpublished case, we only include a citation to the North Carolina Appellate Reporter.